THOMAS WATSON, Plaintiff-Appellant, v. J.C. PENNEY COMPANY, INC., Defendant-Appellee.

Fourth District   No. 4—92—0341

Opinion filed December 23, 1992.

KNECHT, J., dissenting.

Jerome Mirza & Associates, Ltd., of Chicago (Jerome Mirza, of counsel), for appellant.

Karen L. Kendall and Brad A. Elward, both of Heyl, Royster, Voelker & Allen, of Peoria, and Gary S. Schwab and Kurt M. Koepke, both of Heyl, Royster, Voelker & Allen, of Springfield, for appellee.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In January 1990, plaintiff, Thomas Watson, slipped and fell on some ice as he exited the rear entrance of the J.C. Penney store in Lincoln. As a result, plaintiff brought this personal injury action against defendant, J.C. Penney Company, alleging that defendant negligently failed to remove ice and snow present at that entrance. Defendant made a motion for summary judgment, arguing that plaintiff slipped on a natural accumulation of snow and ice that it owed plaintiff no duty to remove. In April 1992, the trial court granted this motion. Plaintiff appeals, arguing that (1) we should overrule the long-standing natural accumulation rule in Illinois, and (2) the trial court erred in finding that no genuine issue of material fact existed.

We affirm.

I. FACTS

An icy snow fell late in the night on January 25 and in the early morning on January 26, 1990, in Lincoln, Illinois. The snow stopped that morning, but started again later during the day. This snow and ice caused slippery conditions on streets throughout the town. At about 9 a.m. that morning, Donald Jordan, the maintenance manager at the J.C. Penney store in Lincoln, shoveled snow away from the store's rear entrance. After removing all the snow and ice, Jordan decided to not sprinkle salt because the snow had stopped and no ice remained on the entranceway.

Later that day, plaintiff and his wife went shopping at that J.C. Penney store. In her deposition, plaintiff's wife testified that the snow had again started falling several hours before they went shopping. On their way out of the store, while plaintiff opened the door for his wife, plaintiff slipped and fell on some ice on the metal frame of the door opening. As a result, plaintiff broke his left clavicle and seriously injured his right knee.

During plaintiff's deposition, he was questioned about the nature and source of the ice. He testified that ice was everywhere at the rear entrance to the store as he exited. In her deposition, plaintiff's wife similarly described the rear entrance. Plaintiff also said that the entranceway appeared as if someone had shoveled it earlier in the day. He explained that he saw piles of snow on the side of the entranceway and it appeared cleaner than the rest of the parking lot. He also said that "it appeared to me that somebody had taken a shovel or some other instrument and made an attempt to clean [the entrance-

way] and the temperature had dropped again and that froze." However, he admitted that he did not know whether the temperature had risen above freezing. He also testified that he had "no idea" how the ice had gotten there. He merely speculated that the ice resulted from thawing and freezing after shoveling.

Plaintiff described several patches of ice, which were in the form of footprints, as looking like they resulted from the customer traffic into the store. When specifically asked if the particular patch of ice on which he slipped appeared to be a refrozen film of ice, plaintiff replied that it did not, and instead looked like a footprint. Finally, when asked to clarify from where he thought the rest of the ice came, he said, "I would assume it came from the good [L]ord."

## II. ANALYSIS

### A. *The Natural Accumulation Rule*

■■ The natural accumulation rule states that a business owner owes no duty to business invitees to remove natural accumulations of snow and ice; however, where the business owner does attempt to remove snow, he owes a duty not to leave or cause unnatural accumulations. (*Wilson v. Gorski's Food Fair* (1990), 196 Ill. App. 3d 612, 615, 554 N.E.2d 412, 414; *Kalata v. Anheuser-Busch Cos.* (1990), 204 Ill. App. 3d 351, 354, 562 N.E.2d 320, 322-23.) Even when a person voluntarily removes snow, he does not owe a duty to remove natural accumulations of ice underneath the snow; the plaintiff must show that defendant created the unnatural accumulation of exposed ice. (*Eichler v. Plitt Theatres, Inc.* (1988), 167 Ill. App. 3d 685, 692, 521 N.E.2d 1196, 1201.) In Illinois, this rule dates back to 1931, and Illinois courts of review have consistently reaffirmed it. See *Graham v. City of Chicago* (1931), 346 Ill. 638, 643, 178 N.E. 911, 913; *Strappelli v. City of Chicago* (1939), 371 Ill. 72, 74-75, 20 N.E.2d 43, 44-45; *Lansing v. County of McLean* (1978), 69 Ill. 2d 562, 571, 372 N.E.2d 822, 826; *Wilson*, 196 Ill. App. 3d at 615, 554 N.E.2d at 414.

■ Plaintiff considers this rule antiquated and urges this court to overrule it, as the courts in several other States have done. (See *Quinlivan v. Great Atlantic & Pacific Tea Co.* (1975), 395 Mich. 244, 235 N.W.2d 732; *Isaacson v. Husson College* (Me. 1972), 297 A.2d 98; *Kremer v. Carr's Food Center, Inc.* (Alaska 1969), 462 P.2d 747.) Put simply, plaintiff makes this request in the wrong forum. (See *Melton v. Central Illinois Public Service Co.* (1991), 220 Ill. App. 3d 1052, 1057, 581 N.E.2d 423, 426.) Plaintiff should address this matter to the legislature, which formulates the public policy of this State and

which could change this "antiquated rule" if it wished. As one court recently noted in a different context:

" 'A change in the law which has the power to so deeply affect social and business relationships should only be made after a thorough analysis of all the relevant considerations. *** The type of analysis required is best conducted by the legislature using all of the methods it has available to it to invite public participation.' " *Estate of Ritchie v. Farrell* (1991), 213 Ill. App. 3d 846, 849-50, 572 N.E.2d 367, 369, quoting *Olsen v. Copeland* (1979), 90 Wis. 2d 483, 491, 280 N.W.2d 178, 181.

Indeed, 13 years ago, the legislature enacted the Snow and Ice Removal Act to grant immunity to residential owners or occupants from liability (absent willful or wanton misconduct) for injuries suffered as a result of snowy or icy conditions after the residential owner or occupant has removed or attempted to remove snow and ice from the sidewalk. (See Ill. Rev. Stat. 1991, ch. 70, pars. 200 through 202.) Further, six years ago, the legislature amended section 3—105(a) of the Local Governmental and Governmental Employees Tort Immunity Act to broaden the immunity that act provides to specifically include injuries caused "by the effect *of weather conditions.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 85, par. 3—105(a), as amended by Pub. Act 84—1431, art. 1, §2, eff. Nov. 25, 1986 (1986 Ill. Laws 3740, 3744).

This recent legislative action regarding weather-related issues of tort law demonstrates that the legislature pays attention to this area of the law and does not hesitate to change or refine preexisting legal doctrine *when the legislature deems such a change appropriate.* Thus, we conclude that the legislature, by not amending the 60-year-old natural accumulation rule, has indicated its present satisfaction with that rule. This conclusion provides an additional reason for this court to be very hesitant before dabbling in matters involving such fundamental policy questions.

We also note that the Illinois Supreme Court created the natural accumulation rule as a matter of tort common law in this State (*Graham,* 346 Ill. at 643, 178 N.E. at 913), and, as noted, the supreme court has often reaffirmed that rule. In the absence of legislative action, any judicial modification of it should be made by the Illinois Supreme Court, not this court.

Plaintiff argues that the supreme court's decision in *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223, indicates that the Illinois Supreme Court no longer would abide by the natural accumulation rule. In *Ward,* the supreme court adopted section 343 of the

Restatement (Second) of Torts (see Restatement (Second) of Torts §343 (1965)), which adopts a general principle for a business owner's duty toward business invitees. (*Ward*, 136 Ill. 2d at 145-46, 554 N.E.2d at 229.) Plaintiff argues that *Ward* tacitly rejects the natural accumulation rule in favor of this more general standard of liability, and that *Ward* thus implicitly authorizes us to abolish the natural accumulation rule.

We disagree that *Ward* had any impact on the natural accumulation rule. First, *Ward* did not address or even allude to the natural accumulation rule. Second, *Ward* merely restated that the supreme court had *already* adopted section 343 as standard of care for business owners in *Genaust. v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 468, 343 N.E.2d 465, 472. (See *Ward*, 136 Ill. 2d at 145, 554 N.E.2d at 229.) Indeed, in *Genaust*, the supreme court pointed out that section 343 "correctly states the *settled* law regarding the liability of possessors of land to invitees," and cited its prior cases from 1955, 1973, and 1975. (Emphasis added.) (*Genaust*, 62 Ill. 2d at 468, 343 N.E.2d at 472, citing *Geraghty v. Burr Oak Lanes, Inc.* (1955), 5 Ill. 2d 153, 157, 125 N.E.2d 47, 50; *Blue v. St. Clair Country Club* (1955), 7 Ill. 2d 359, 363, 131 N.E.2d 31, 33; *Nowicki v. Union Starch & Refining Co.* (1973), 54 Ill. 2d 93, 98, 296 N.E.2d 321, 323; *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 557, 328 N.E.2d 538, 541.) Thus, section 343 of the Restatement (Second) of Torts is no stranger to Illinois law and has coexisted with the natural accumulation rule for many years.

Finally, plaintiff requests that if we choose to follow the natural accumulation rule, we should at least certify this question pursuant to Supreme Court Rule 316 (134 Ill. 2d R. 316) so that the Illinois Supreme Court can again address the issue. Although this case does raise a significant issue that the supreme court has not recently revisited, we believe that appellate courts should use Rule 316 very sparingly. We conclude that this case is not one in which our use of a certificate of importance would be appropriate.

## B. *Summary Judgment*

Plaintiff next argues that the trial court erred by granting defendant's motion for summary judgment because (1) the jury should decide whether defendant should be held liable for any natural accumulation of snow and ice, and (2) a genuine issue of material fact existed regarding whether the ice on which defendant slipped was a natural or unnatural accumulation. We disagree.

A trial court should grant a motion for summary judgment only when no genuine issue of material fact exists. (*Wright v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis* (1992), 229 Ill. App. 3d 680, 682, 593 N.E.2d 1070, 1072.) Whether a duty exists presents a question of law for the court to decide. (*Brown v. Kidd* (1991), 217 Ill. App. 3d 860, 867, 578 N.E.2d 224, 230.) "If no duty exists, no recovery is possible as a matter of law and summary judgment in favor of the defendant is proper." (*Brown*, 217 Ill. App. 3d at 868, 578 N.E.2d at 230.) The Illinois Supreme Court recently wrote the following regarding summary judgment:

"Although the use of a summary judgment procedure is encouraged as an aid in expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should only be allowed when the right of the moving party is clear and free of doubt. [Citation.] 'In determining whether the moving party is entitled to summary judgment, the court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent.' (*In re Estate of Whittington* (1985), 107 Ill. 2d 169, 177[, 483 N.E.2d 210, 215]; [see also] *Tersavich v. First National Bank & Trust* (1991), 143 Ill. 2d 71, 80-81[, 571 N.E.2d 733, 735-36].)" *Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271-72, 586 N.E.2d 1211, 1215.

■ In his deposition, plaintiff did not testify that the ice resulted from thawed and refrozen puddles of water or from anything that would imply that defendant's employee had left a dangerous condition when he shoveled the snow. Instead, plaintiff first testified that he did not know how the ice formed, then clarified that the ice on which he slipped resulted from customer traffic, and then testified that he assumed that the ice came from "the good [L]ord." None of these assertions create a genuine issue of material fact upon which a jury could conclude that the ice resulted from an unnatural accumulation created by defendant. Instead, these statements indicate that the ice resulted from the natural accumulation and footprints from customer traffic from which defendant had no duty to protect plaintiff. See *Stypinski v. First Chicago Building Corp.* (1991), 214 Ill. App. 3d 714, 716, 574 N.E.2d 717, 718 (a landowner does not have a duty to remove tracks left by customers who have walked through natural accumulations of snow, slush and water).

### III. CONCLUSION

Plaintiff's complaint alleges that J.C. Penney negligently failed to

remove these natural accumulations of ice. However, defendant owed no duty to do so, and the trial court properly granted summary judgment for defendant.

For the reasons stated, we affirm the trial court.

Affirmed.

GREEN, J., concurs.

JUSTICE KNECHT, dissenting:

I disagree with the majority opinion. The trend of modern cases is to reject the natural accumulation of snow and ice rule. One reason may be no one understands the difference between a natural accumulation of ice and snow and an unnatural accumulation. Another reason may be business customers deserve better treatment from business owners.

The question presented is whether J.C. Penney's duty of reasonable care to business invitees is to be ignored in favor of an archaic rule. I believe the Illinois Supreme Court answered that question in *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223. Justice Ryan's scholarly review and analysis of section 343 of the Restatement (Second) of Torts (Restatement (Second) of Torts §343 (1965)) is fully applicable to the question presented in this case.

The majority suggests plaintiff is arguing his position in the wrong forum, and an intermediate court of review ought be particularly cautious in dabbling in such fundamental policy questions. I agree caution is appropriate, but logic suggests the *Ward* analysis no longer permits the peaceful coexistence of section 343 and the natural accumulation rule.

If the operator of a business owes a duty of reasonable care to his customers, then that duty should extend to the kind of risk encountered by plaintiff here. This would not impose any greater burden than already imposed on defendant as to other sorts of conditions. It would not make defendant absolutely liable because a customer slipped on ice or snow. It would simply leave it for a jury to decide whether the parties acted reasonably. Instead of a drastic change, this would simply be a return to traditional analysis no longer skewed by a special exception that has no meaningful basis in law or public policy.